## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

EMILY E. HEIMS,

            Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

            Defendant.

No. 16-CV-176-LRR

**REPORT AND RECOMMENDATION**

———————————————

Plaintiff Emily E. Heims seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for child's insurance benefits (CIB) under 42 U.S.C. § 402(d) and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. Heims argues that the administrative law judge (ALJ) erred in assessing Heims' cognitive functioning by failing to order a consultative examination, by failing to include credible limitations in the questions posed to the vocational expert (VE), and by not giving proper weight to non-medical reports. Heims further argues that the ALJ's residual functional capacity (RFC) determination was not supported by sufficient medical evidence. I recommend **reversing and remanding** the ALJ's decision.

## I.    BACKGROUND[1]

Heims was born in 1994 and was twenty years old at the time of her administrative hearing with the ALJ. AR 63, 150.[2] She applied for CIB and SSI benefits[3] on June 18, 2013, alleging she has been disabled since birth due to, among other issues, bipolar disorder, post-traumatic stress disorder (PTSD), learning disability, depression, generalized anxiety disorder, borderline personality disorder, possible schizoaffective disorder, and back issues.[4] AR 37, 150, 165. The Commissioner denied Heims' CIB and SSI applications initially and on reconsideration (AR 163, 178, 198, 216), and Heims subsequently requested a hearing before an ALJ (AR 282-84). The ALJ held a hearing on February 24, 2015, at which both Heims and a VE testified. AR 55-56. The ALJ subsequently issued a written opinion following the familiar five-step process outlined in the regulations, finding Heims was not disabled because she could work as a mail clerk, photocopy machine operator, or cleaner.[5] AR 31-44.

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 14).

[2] "AR" refers to the administrative record below (filed at Docs. 9-10).

[3] Heims previously applied for SSI and CIB benefits in August 2012 and was found not disabled on February 18, 2013. AR 31, 151, 166.

[4] Heims does not challenge the ALJ's physical RFC determination, but rather, the ALJ's assessment of her mental impairments and mental RFC determination. Accordingly, I will only address portions of the record relevant to Heims' mental impairments and limitations.

[5] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

Heims received special education services while in school and graduated from the twelfth grade.  AR 63, 161, 380, 1063-66.  She lives in an apartment by herself, which she described as "more like community living."  AR 63, 659.  She explained that two or three workers assisted her three or four times per week with learning social skills and budgeting.  AR 64-65.  She was discharged from these support services a couple of weeks before the administrative hearing and was making arrangements to receive similar services from another provider.  AR 65-68, 756-58.  Heims spends her money impulsively and testified she requires the assistance of community support workers to live independently and to help her because of her learning disability.  AR 64-65, 68.  She described herself as shy around people, and she believes others are judging her.  AR 66.  The ALJ found Heims has "daily feelings of worthlessness, paranoia, and cyclical emotions."  AR 37.  She is not employed, although she has previously worked for short periods as a cashier or salesperson and as a call center employee.  AR 68-69, 78-81.  She received vocational rehabilitation services from Goodwill Industries and Iowa Vocational Rehabilitation Services on multiple occasions.  AR 68-69, 432-59, 482-591, 593-94, 598-99, 608-11, 620-42, 727-42, 745.  Heims reported needing a job coach because it takes her "excessive time to learn new job concepts."  AR 683.  She testified she had issues attending work because of her feelings that co-workers were judging her and talking behind her back.  AR 69.  Heims spends her time listening to the radio, watching television, hanging out with friends and family, and exercising, and she is presently engaged to be married.  AR 663, 694.  She leaves home daily, describing herself as an "outdoor girl."  AR 662.  Although she is unable to drive, she can walk to her destination or take public transportation, and she does not require a companion when in public.  AR 662, 693.  Heims reports that she is "great" at following written instructions, and although she previously experienced difficulty following verbal instructions, she more recently reported that she is good at following verbal instructions if they are spoken clearly.  AR 664, 695.

3

Heims has suffered from mental health issues since at least age 9 (depression) and has a long history of mental health treatment consisting of medication, therapy, and multiple hospitalizations. AR 74, 766, 1063, 1077, 1677. The record includes documentation of the following treatment: medication management for mood swings, bipolar disorder, irritability, and psychosis from nurse practitioner Carol Aunan in 2013 and 2014, and therapy for depression and anxiety from Richard Socwell, M.S.Ed., in 2014, both with the Abbe Center (AR 1087-93, 1355-58, 1361-66, 1489-1509); medication management related to anxiety and depression from Dr. Kerri Husman, M.D., and therapy sessions with licensed mental health counselor Sandra Griffith from 2010 to 2013, both with the Cedar Centre Psychiatric Group (AR 759-67, 793-806, 950-67, 1332-44, 1348-52); and therapy from nurse Terry J. Carlson (Nurse Carlson) for approximately six weeks in August and September 2013 (AR 1438-39). Heims' most recent hospitalizations occurred in November 2014 for schizophrenia and risk of bodily harm (AR 1638-59), in December 2014 for suicidal ideation and bipolar disorder with psychotic features (AR 1671-86), and in January 2015 for suicidal ideation and depression (AR 1687-1701).

With regard to medical source opinions, the record includes mental RFC[6] opinions from non-examining state agency consultants Dr. Aaron Quinn (AR 159-62, 174-77) and Dr. Myrna Tashner (AR 197, 215) and a letter from Nurse Carlson dated November 6, 2013 (AR 1438-39). The record also contains prior opinions[7] by non-examining state agency consultants from September 2012 and February 2013 (AR 101-03, 129-31), a consultative examination report by Dr. John E. Williams from July 2011 (AR 839-43),

_____

[6] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[7] These opinions were from the previously adjudicated period of non-disability.

and a Teacher's Questionnaire from April 2011 covering the period up to November 5, 2010 (AR 380-95).

Dr. Quinn opined that Heims had moderate limitations in her abilities to remember and understand detailed instructions (regarding understanding and memory); to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted, and to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods (regarding sustained concentration and persistence); and to respond appropriately to change in the work setting, to be aware of normal hazards and take appropriate precautions, and to set realistic goals or make plans independently of others (regarding adaptation limitations). AR 159-60, 174-75. Dr. Quinn also opined that with regard to social interaction, Heims has marked limitations in her ability to interact appropriately with the general public and moderate limitations in her abilities to accept instructions and respond appropriately to criticisms from supervisors and to get along with coworkers and peers. AR 160, 175. Dr. Quinn found the allegations contained in Heims' function report and a third-party report were fully credible based on their consistency with the other evidence. AR 161, 176. Dr. Quinn concluded Heims is "able to complete simple, repetitive tasks in a sustained manner while she will have difficulties sustaining attention, following detailed instructions, maintaining pace, interpersonal functioning, handling change, and using good judgment." *Id*. Dr. Quinn found Heims has only mild limitations in her activities of daily living but noted Heims has borderline range intellect and that her ability to maintain pace and her cognitive functioning are "expected to vary secondary to her emotional status." *Id*. Dr. Tashner, as part of the reconsideration, affirmed Dr. Quinn's opinions, noting updated records

5

show Heims remained stable at that time and cited information from Nurse Carlson. AR 197, 215.

Nurse Carlson's opinion stated that Heims "responded well to therapy, appearing to be able to learn some of the skills slowly with practice"; that her communication with her fiancé had improved; and that her anxiety had lessened. AR 1438. Nurse Carlson also opined that Heims' "lack of emotional stability, poor self-esteem, learning disability, and poor judgment and decision-making skills" serve as barriers to her progress. *Id.* Heims' inconsistency in attending treatments sessions with Nurse Carlson impeded Heims' progress and resulted in Nurse Carlson being unable to fully assess Heims' ability to function in a work environment. *Id.*

The ALJ determined Heims suffers from severe impairments of "bipolar disorder, generalized anxiety disorder with [PTSD][], degenerative disc disease at L4-L5 with scoliosis, marijuana abuse, borderline intellectual functioning, and borderline personality disorder with narcissistic tendencies" and non-severe impairments of gastroesophageal reflux disease (GERD), asthma, headaches, and obesity. AR 34. The ALJ concluded at step three that Heims' impairments do not meet or equal Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), or 12.09 (substance addiction disorders). AR 35. The ALJ did not consider whether Heims' impairments meet or equal Listing 12.05 (mental impairment). AR 34-36. The ALJ determined Heims' mental RFC as follows:

> [Heims] is limited to tasks that can be learned in 30 days or less involving no more than simple work-related decisions and requiring little to no judgment, with only occasional workplace changes; [she] can tolerate no interaction with the public; and can tolerate occasional interaction with co-workers and supervisors.

AR 36.

In making the RFC determination, the ALJ found that Heims' allegations about the intensity, persistence, and limiting effects of her symptoms were not fully credible

6

because they were not fully supported by the medical evidence and were inconsistent with other evidence in the record, and because her mental impairments were "generally amenable to treatment." AR 38-40. The ALJ discussed how Heims' allegations were inconsistent with her activities of daily living, including attending to her personal care needs and the ability to perform routine household chores such as "preparing meals (e.g., 'steak, chicken [A]lfredo, potatoes, pizza, sandwiches, cookies'), making her bed, washing dishes, laundering clothes, . . . vacuuming," and grocery shopping. AR 35, 38. The ALJ also found that although Heims has no prior substantial gainful employment (AR 33), her prior work experience demonstrates that she possesses a greater ability to function socially than she alleges. AR 39-40.

The ALJ gave considerable weight to the opinions of Dr. Quinn and Dr. Tashner, finding they were consistent with Heims' "longitudinal medical history and self-reported daily activities." AR 40. The ALJ gave limited weight to prior state agency consultant opinions because they relate to the previously adjudicated period. AR 40. For the same reason, and because it was based on a one-time examination, the ALJ gave limited weight to Dr. Williams' opinion. AR 41. The ALJ gave little weight to Nurse Carlson's opinion because he is not an acceptable medical source and because of the limited duration and nature of the treatment he provided. AR 41. Finally, the ALJ gave minimal and limited weight to the Teacher's Questionnaire and reports from vocational rehabilitation specialists. AR 41. The ALJ noted that these reports "merely document the observations of laypersons during the previously adjudicated period" (referring to the Teacher's Questionnaire and Goodwill Industries reports), and that they were based on Heims' subjective complaints (which were not fully credited) and "did not provide any specific quantified statements regarding [Heims'] ability to perform specific work-related activities on a regular and continuing basis." AR 41.

The Appeals Council denied Heims' request for further review on August 2, 2016 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. *See* 20

C.F.R. §§ 404.981, 416.1481. The Appeals Council received additional evidence consisting of a representative's brief and an "Optimae LifeServices Plan" dated June 30, 2015. AR 6-21. Heims timely filed a complaint in this Court (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 15, 19), and the Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Heims argues the ALJ erred by not ordering a consultative evaluation regarding Heims' cognitive functioning, which she argues was necessary to determine whether she meets or equals Listing 12.05C, and by not precisely setting forth Heims' limitations in the ALJ's questions to the VE. Heims also challenges the ALJ's RFC determination, arguing the failure to develop the record resulted in an RFC that is not supported by some medical evidence and that the vocational rehabilitation reports were not given proper weight. I will address each of these issues in turn.

### A.    Cognitive Functioning

The ALJ determined at step three that Heims suffers from borderline intellectual functioning, among other severe impairments.   AR 34.   In determining Heims' RFC during step four, the ALJ found, *inter alia*, that Heims has "below average intellectual functioning" and an intelligence quotient (IQ) "estimated between 70 and 80."   AR 38. Heims argues that, based on the evidence presented, the ALJ should have ordered a consultative examination to determine whether Heims' IQ fell within the scope of Listing 12.05C (intellectual disability).   The Commissioner disagrees, arguing that Heims and her attorney did not take this position during the administrative hearing, that the ALJ developed an adequate record that shows Heims has an IQ (of 78) that is above the requirement for Listing 12.05C, and that substantial evidence supports the ALJ's mental RFC determination.   I believe the ALJ erred by not obtaining additional evidence regarding Heims' IQ score and mental functioning and by failing to address whether Heims' impairments meet or equal Listing 12.05C.

At the time of the ALJ's decision,[8] a claimant met Listing 12.05C by demonstrating: (1) deficits in adaptive functioning initially manifested before age 22; (2) "a valid verbal, performance, or full scale IQ score of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C (2015); *see also*

---

[8] The Social Security Administration changed the requirements to meet Listing 12.05 and eliminated Listing 12.05C effective January 17, 2017.   Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138, 66167 (Sept 26, 2016) (codified at 20 C.F.R. pt. 404, subpt. P, app. 1).   The new criteria of Listing 12.05 do not apply, however, to claims pending review in the federal courts decided by the Social Security Administration before January 17, 2017.   *See id.* at 66138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see also Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003) (applying listing in effect at the time of the ALJ's decision when the Social Security Administration stated in the Federal Register that the new listing did not apply to claims pending judicial review in federal court).

9

*Lott v. Colvin*, 772 F.3d 546, 549-50 (8th Cir. 2014). "The results of standardized intelligence tests may provide data to help verify the presence of intellectual disability . . . as well as the extent of any compromise in cognitive functioning." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00D(6)(a). "Standardized intelligence test results are essential to the adjudication of . . . cases of intellectual disability" under Listing 12.05C. *Id.* § 12.00D(6)(b). An ALJ has a "duty to develop the record fully and fairly, even if . . . the claimant is represented by counsel." *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). Further, "it may be reversible error for an ALJ not to order a consultative examination when, without such an examination, [the ALJ] cannot make an informed choice." *Lott*, 772 F.3d at 549 (quoting *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986) (per curiam)).

Even with an IQ score above 70, a claimant's mental impairment, combined with other impairments, may medically equal Listing 12.05C. "A finding that a claimant's impairment is not equal to a listed impairment does not end the inquiry[;] [t]he regulations provide that if a claimant has more than one impairment, the combined effect of the impairments will be considered" to determine whether it medically equals any listing. *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003). The Eighth Circuit has recognized that an ALJ should consider the Programs Operations Manual System (POMS) guidelines when determining whether a claimant's impairments are medically equivalent to Listing 12.05C. *Hesseltine v. Colvin*, 800 F.3d 461, 465 (8th Cir. 2015). The POMS guidelines state that although "a medical equivalence determination would very rarely be required" for Listing 12.05C, "slightly higher IQ[s] (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination." *Id.* (emphasis omitted) (quoting POMS § DI 24515.056). More than once, the Eighth Circuit has reversed an ALJ's decision for failing to consider the POMS guidelines when the claimant's IQ fell just outside the 60 to 70 range, and the claimant had other severe impairments. *See*

10

*Hesseltine*, 800 F.3d at 465-66 (finding substantial evidence did not support the ALJ's conclusory finding that claimant's impairments did not medically equal Listing 12.05C when the claimant had an IQ of 72 and severe impairments of Perthes disease of the left hip, polycystic ovarian syndrome, and obesity); *Shontos*, 328 F.3d at 424, 427 (determining that claimant's IQ of 72, combined with her anxiety, dependency, depression, and degenerative joint disease, was medically equivalent to Listing 12.05C); *Thomas v. Sullivan*, 876 F.2d 666, 670 (8th Cir. 1989) (reversing and awarding benefits because claimant's "borderline intellectual functioning, poor physical condition, and mental illness combine to disable her").  Courts in the Northern District of Iowa have also reversed ALJs' decisions for failure to address medical equivalence to Listing 12.05C when the claimant had a borderline IQ between 71 and 75, in addition to other severe impairments (such that the POMS guidelines were applicable).  *See, e.g.*, *Shelton v. Colvin*, No. 14-CV-0122-LRR, 2016 WL 916431, at *6, *8 (N.D. Iowa Mar. 10, 2016) (claimant's other severe impairments included degenerative disc disease, COPD/asthma, and depression); *Wise v. Colvin*, No. C12-2047, 2013 WL 2243875, at *10-12 (N.D. Iowa May 21, 2013) (claimant's other severe impairments were attention deficit hyperactivity disorder (ADHD), depression, anxiety, patellofemoral syndrome, and a recent ACL repair); *Childers v. Astrue*, No. C12-2015, 2013 WL 54017, at *7-9 (N.D. Iowa Jan. 3, 2013) (claimant's other severe impairments were depression and anxiety).

The Commissioner argues the record provides evidence that Heims has an IQ above 70, which would be higher than the IQ score necessary to satisfy the second requirement for Listing 12.05C.  Doc. 19 at 7, 11.  The ALJ, however, apparently chose not to adopt 78 as Heims' IQ score.  Instead, the ALJ noted that Heims has an estimated IQ between 70 and 80.[9]  This finding is problematic:  an IQ score of 70 would meet the

---

[9] The ALJ's finding that Heims has an estimated IQ score between 70 and 80 also supports a finding that Heims has a lower IQ.  When intellectual testing provides more than one score,

requirement for Listing 12.05C, an IQ score of 71-75 with Heims' other impairments may medically equal Listing 12.05C, while a higher IQ score would not meet or equal the listing. The ALJ did not directly address Heims' IQ score, aside from discussing (as part of the RFC determination) that "routine treatment sessions" evidence Heims' below average intellectual functioning and estimated IQ range of 70-80. AR 38.

It is unclear whether any IQ testing in the record was valid and if so, whether an IQ score of 78 is Heims' overall IQ score or the score from one portion of the testing (such as verbal). The record contains references to IQ testing from 2010 (AR 823, 1350), but the actual test results are not included in the record. In addition, the underlying record contains inconsistencies on this issue. Portions of the record tend to support a finding that Heims has an IQ score above 75. As part of the July 2011 psychological assessment, Dr. Williams opined[10] that Heims has a history of low cognitive functioning but that she reported her lowest grade in school being a C[11] and that she functions "at least in the Borderline Range of intellectual ability though no intellectual testing was completed." AR 840, 841. One record includes a diagnosis of borderline personality and borderline IQ and estimates Heims has above-average intelligence, a second notes Heims' "[i]ntellectual functioning appears to be in the average range," while a third

---

"e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series," the lowest score should be used in considering Listing 12.05. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00D(6)(c); *see also Hesseltine*, 800 F.3d at 464 (noting IQ score of 60 through [*and including*] 70 meets IQ requirement for Listing 12.05C). Although 12.00D(6)(c) does not explicitly refer to a situation wherein a claimant's IQ is assigned a range, as opposed to separate scores for various sections of the test, the underlying principle is that the claimant should be afforded the benefit of her being assumed to have the lowest of those values offered. Thus, because the ALJ found that Heims had an estimated IQ score of 70 to 80, Heims should have been afforded the benefit of considering her IQ as 70 (or at least 75 or lower), unless a valid IQ score showed otherwise.

[10] Notably, the ALJ gave limited weight to this opinion because it was based on a one-time examination during a previously adjudicated period. AR 41.

[11] Records show that although Heims received some grades of As and Bs, she received more grades of Cs and Ds during the ninth and tenth grades. AR 391.

comments "she is apparently normal range intelligence as demonstrated by use of vocabulary and general fund of knowledge." AR 1080, 1198, 1228. One record from inpatient treatment (for schizophrenia with a discharge against medical advice) listed a diagnosis of learning disability but included a comment that Heims "is high functioning enough to live on her own and maintain a job." AR 1647-48. Further, two records contain specific references to an IQ score of 78, but these appear to be based on information from Heims' mother. AR 902 (from October 2010), 1064-66 (from October 2011).

Other portions of the record, however, support a finding of a lower IQ score. Multiple records list a diagnosis of borderline intellectual functioning (AR 865, 1336, 1096, 1362, 1366, 1509), which "is a condition defined as an IQ score within the 71-84 range." *Roberts v. Apfel*, 222 F.3d 466, 469 at n.3 (8th Cir. 2000). One record from May 2013 noted Heims' IQ estimate as 75-80, while another from September 2013 listed an IQ estimate of 75. AR 1088, 1363. Another record, in summarizing Heims' past history, "noted that she was treated for ADHD, learning disability and lower level learning" and that these issues were ongoing. AR 1230. Yet another record indicates that Heims has a "low IQ." AR 1350. As noted above, an IQ score from 71 to 75 could medically equal Listing 12.05C when combined with other impairments. Therefore, the inconsistencies in the record are material to the issue whether Heims could possibly meet or equal Listing 12.05C for intellectual disability. When the ALJ's "decision d[oes] not adequately account for the inconsistencies in the medical evidence," the court is "unable to determine whether substantial evidence on the record as a whole supports" the ALJ's decision, and the case must be remanded. *Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016); *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 819-20, 823 (8th Cir. 2008) (holding that remand was required when the ALJ failed to address the intellectual-disability listing and did not resolve inconsistencies in the record regarding the claimant's IQ when one IQ test showed a verbal IQ of 84, performance IQ of 75, and overall IQ of 78; another

13

IQ test showed a verbal IQ of 81, performance IQ of 70, and overall IQ of 73; and another test showed results in the "Low Average to Mental Retardation range"; despite a treatment note summarizing these test results as being "consistent with Borderline Intellectual Functioning").

Although an ALJ may reject an IQ score if it is inconsistent with the record, *see Lott*, 772 F.3d at 552 n.5, the ALJ in this case made no such finding. The record here contains no actual IQ test results, and it is unclear whether any IQ score listed in the record is valid. The record is therefore insufficient to determine whether Heims has a valid IQ score by which she could meet or equal Listing 12.05C. Accordingly, the ALJ should have ordered a consultative examination to determine Heims' IQ score.

In addition, the ALJ also failed to address whether Heims' intellectual impairment meets or equals Listing 12.05C. In considering the listings under step three of the analysis, the ALJ specifically addressed four other listings. AR 35. A case may be reversed and remanded when it is not clear from the record that the ALJ considered whether the claimant met an applicable listing. *Chunn v. Barnhart*, 397 F.3d 667, 671-72 (8th Cir. 2005) (finding ALJ's decision not supported by substantial evidence when the ALJ made no mention of Listing 12.05C and failed to address psychologist's opinion that claimant had adaptive functioning consistent with an IQ at the low end of mild mental retardation); *see also Foster v. Astrue*, No. C11-3063-MWB, 2012 WL 5386382, at *4-5 (N.D. Iowa Nov. 1, 2012) (remanding when ALJ failed to explain why Listing 12.05C was not addressed or was ignored despite having considered applicability of other listings). The failure to address a specific listing, however, is not reversible error as long as substantial evidence in the record supports the ALJ's overall conclusion. *See Igo v. Colvin*, 839 F.3d 724, 728-29 (8th Cir. 2016). In particular, an ALJ's failure to consider whether a claimant is mentally disabled does not warrant a remand if "the medical evidence does not establish that [the claimant]'s disability meets or equals Listing 12.05C." *Slatton v. Colvin*, No. 3:15-cv-00329 PSH, 2016 WL 2343404, at *4-5, n. 7

14

(E.D. Ark. Apr. 29, 2016) (finding remand unnecessary where ALJ failed to address Listing 12.05C because the record included medical opinions demonstrating the claimant's impairments would not meet or equal the Listing). The record in this case does not establish that Heims' impairments would not have met or medically equaled Listing 12.05C.

Although not directly addressed by the ALJ, the evidence demonstrates that Heims' intellectual impairment and functional deficits manifested prior to age twenty-two. Indeed, she was only twenty years old at the time of the administrative hearing. AR 63. Heims received special education services while in school,[12] and treatment records note she has below average intelligence. AR 38, 1063-66. The real issue is whether Heims' borderline intellectual functioning causes deficits in adaptive functioning. The regulations do not define "deficits in adaptive functioning." The Social Security Administration purposefully chose not to define the term because "the method of measuring the required deficits in adaptive functioning differ[s] among" the four major professional organizations to define intellectual disability. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018, 20022 (Apr. 24, 2002). The Social Security Administration allows the use of any of the four organization's definitions. *Id.* For example, one definition requires "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Id.* (quoting American Psychiatric Association (APA), Diagnostic and Statistical Manual of Mental Disorders 39 (4th ed. 1994) (DSM-IV)); *see also Ash v. Colvin*, 812 F.3d 686, 691-92 (8th Cir. 2016).

When evaluating deficits in adaptive functioning, the Eighth Circuit has considered a claimant's ability to perform activities of daily living, such as grooming, housework,

---

[12] Heims' placement in special education may have been due to her issues with behavior rather than intellect alone. AR 38, 387, 389, 886, 1231.

and meal preparation; as well as a claimant's communication skills; social relationships; and limitations in concentration, persistence, or pace. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015); *Cheatum v. Astrue*, 388 F. App'x 574, 576-77 (8th Cir. 2010); *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "IQ scores should be examined to assess consistency with daily activities" in determining whether a claimant has a mental impairment. *Scott*, 529 F.3d at 824. A claimant may still have deficits in adaptive functioning, however, even if able to perform "rudimentary activities of daily living" or to "'achieve social and vocational skills adequate for minimum self-support.'" *Lott*, 772 F.3d at 551 & n.4 (quoting DSM-IV 43) (recognizing that "Listing 12.05C assumes that the mildly-retarded can work if their only impairment is mild mental retardation[;] [d]isability is based on mild mental retardation *plus* an additional physical or mental impairment that imposes a significant limitation on a person's ability to work); *see also Williams v. Colvin*, No. 5:12-CV-676-D, 2013 WL 6058204, at *10 (E.D.N.C. Nov. 15, 2013) (finding an ALJ's "description of [a claimant]'s RFC is not necessarily inconsistent with a diagnosis of intellectual disability meeting Listing 12.05"). A claimant need not suffer from any marked or extreme limitation in adaptive functioning to satisfy Listing 12.05C. *Contreras v. Astrue*, No. CIV 08-1196, 2009 WL 5252828, at *10 (D. Minn. Aug. 26, 2009) (noting that Listing 12.05D would be redundant if Listing 12.05C required a finding of marked limitations and finding that mild and moderate deficits in adaptive functioning are sufficient to meet Listing 12.05C).

Here, while determining the applicability of other listings, the ALJ found that Heims had some mild deficits in activities of daily living; moderate difficulties in concentration, persistence, and pace; and marked difficulties in social functioning. AR 35. These limitations are supported by the opinions of Drs. Quinn and Tashner (AR 159-62, AR 212-15), to which the ALJ gave considerable weight. AR 40. The ALJ did not find Heims met or equaled the four specific listings considered because each of those listings (unlike Listing 12.05C) requires marked limitations in at least two areas, and the

16

ALJ found marked limitations in only one area (social functioning).  AR 35.  As noted above, however, "Listing 12.05C does not require 'marked' limitation in adaptive functioning."  *Contreras*, 2009 WL 5252828, at *10 (concluding ALJ's finding that claimant was "mildly impaired in Activities of Daily Living and moderately impaired in Social Functioning and Concentration, Persistence, and Pace" was sufficient to satisfy deficits in adaptive functioning element of Listing 12.05C); *but see Ash*, 812 F.3d at 691-93 (finding insufficient deficits in adaptive functioning where medical evidence showed the claimant had only mild restrictions in activities of daily living and moderate difficulties in social functioning, concentration, and persistence, based on claimant's ability to live independently, drive, perform chores and personal care tasks, operate a cash register, and socialize with others).

In particular, the ALJ here found that Heims has marked issues[13] with social functioning.  AR 35.  This finding mirrors the opinions of the state agency consultants and is supported by other evidence in the record.  Treatment records note that Heims engaged in aggressive and assaultive behavior and that she has a history of homicidal ideation.  AR 902, 1502, 1625, 1639, 1647, 1675.  This type of behavior is significant in assessing deficits in adaptive functioning.  *See Maresh v. Barnhart*, 438 F.3d 897, 900-01 (8th Cir. 2006) (noting frequent childhood fights as a sign of deficits in adaptive functioning at a young age and homicidal thoughts as evidence that claimant's personality disorder had more than slight effect on ability to work); *Wyatt v. Colvin*, No. 15-00001-

---

[13] The record also demonstrates Heims may have significant issues in other areas of adaptive functioning.  Information in the record shows Heims has issues relating to others, accepting feedback, is disruptive, and unable to manage personal stress (AR 385, 404, 511-12, 519, 598-99, 609-11); she has issues with comprehension, concentration, and staying on task (AR 405, 510, 1438); and Dr. Husman found Heims suffered from disorganized thinking and had limited insight and judgment (AR 957-60, 962, 966, 1034, 1037-38, 1336, 1338, 1340, 1344).  Although she can count change, Heims was unable to pass the driving test to obtain her driver's license, has issues paying bills, and does not use a checkbook.  AR 464, 472, 603, 615, 662, 671, 693.  Also, during the administrative hearing, she did not understand the meaning of the term "objection."  AR 58.

CV-W-DGK-SSA, 2015 WL 5147565, at *2 (W.D. Mo. Sep. 2, 2015) (citing *Lott* and *Maresh* for proposition that violent, aberrant, or anti-social behaviors are "hallmarks of deficits in adaptive functioning" and noting lack of such behavior and the ability to maintain normal social functioning support finding that claimant did not meet Listing 12.05C).  Other records show Heims had no school friends, was unable to make new friends, could not accept criticism or correction, and struggled "incredibly" with social interactions.  AR 403-04, 871, 886.  Therapy notes demonstrate Heims suffers from ongoing issues with relationships, which increases her anxiety.  AR 1332-33, 1335, 1352, 1371-73, 1438.  Function reports from both Heims[14] and third parties indicate she has limited social interaction (only family, her fiancé, therapy group, and occasionally church) and has issues interacting with others.  AR 465-67, 473-74, 604-06, 616-17, 663-64, 694-95, 667, 672-73.  In particular, her mother noted one of her primary issues is social functioning and that she lacks insight into this issue.  AR 667, 672-73.  Based on the record in this case, the ALJ could conclude that Heims has deficits in adaptive functioning as required by Listing 12.05C.

With regard to the third requirement for Listing 12.05C (an additional impairment that imposes additional and significant limitations), "[t]he issue is not whether the claimant can perform gainful activity; rather, it is whether" she has an additional impairment that causes significant work-related limitation in function.  *Maresh*, 438 F.3d at 901 (alternation in original) (noting claimant's personality disorder caused additional limitations as required by Listing 12.05C in rejecting Commissioner's argument that claimant's ability to work despite mental impairment precluded finding of disability).  The ALJ's findings—which themselves are not contested by the Commissioner—demonstrate Heims meets the third requirement for Listing 12.05C.  The ALJ found that

---

[14] The ALJ, in determining RFC, did not fully credit Heims' subjective complaints on various grounds that did not involve her limitations in social functioning.  AR 38-40.

18

Heims has a "physical or other mental impairment imposing an additional and significant work-related limitation of function[:]" she has the additional severe impairments of bipolar disorder, generalized anxiety disorder with PTSD, degenerative disc disease with scoliosis, marijuana abuse, and borderline personality disorder. AR 34.[15] The ALJ found these other "severe" impairments "constitute more than slight abnormalities and have had more than a minimal effect on [Heims's] ability to perform basic work activities." *Id.*

In addition to the reasons discussed above, cases cited by the Commissioner (Doc. 19 at 12-13) support remanding this case. The Commissioner cites *Johnson v. Colvin*[16] in arguing Heims' daily activities are inconsistent with deficits in adaptive functioning. In *Johnson*, unlike here, the record included evidence of claimant's valid IQ scores, the ALJ specifically addressed Listing 12.05C, and the court noted the ALJ's reliance, in part, on medical opinion evidence in upholding the ALJ's finding. *See Johnson*, 788 F.3d at 871-72, 873. The Commissioner cites *Roberts v. Apfel*[17] for the proposition that a claimant's past work is inconsistent with alleged cognitive deficits. Reliance on this case is likewise misplaced. First, a person who meets Listing 12.05 is *presumed* disabled; there is no need to consider nor does it matter whether the claimant can actually perform prior or other work. *Lott*, 772 F.3d at 549; *Maresh*, 438 F.3d at 901. Second, the ALJ's decision in *Roberts* was based in part on two assessments of the claimant's IQ and functional abilities. 222 F.3d at 469-70. The record here does not contain similar evidence. Further, the claimant in *Roberts*, unlike Heims, was able to pass a driving test, had no deficits in social functioning, and behaved appropriately. *Id.* at 469. The record here does not contain the same type of evidence. *See also Phillips v. Colvin*, 721

---

[15] She has also been diagnosed with "schizophrenia versus schizoaffective disorder" during inpatient hospitalizations and has been treated for psychosis. AR 1117-18 (April 2013), 1142 (May 2013), 1355-56 (May 2013), 1647-48 (November 2014), 1677-80 (December 2014).

[16] 788 F.3d 870 (8th Cir. 2015).

[17] 222 F.3d 466 (8th Cir. 2000).

19

F.3d 623, 624-25, 631-32 (8th Cir. 2013) (finding substantial evidence supported finding that claimant's IQ of 72 was not medically equivalent to Listing 12.05C where only severe impairment was borderline intellectual functioning and opinions of two examining psychologists found claimant had intellectual capacity to perform work activities); *Ash*, 812 F.3d at 688, 691 (ALJ's finding that claimant "did not meet Listing 12.05C because she failed to show 'deficits in adaptive functioning'" was supported by substantial evidence when a doctor who performed a mental diagnostic evaluation and intellectual assessment opined that claimant's intellectual disability caused "no interference" with her daily adaptive functioning, noting she "was capable of driving unfamiliar routes, shopping independently, managing her own finances, and completing basic household chores and activities of daily living"; and state agency consultant found claimant's ten-year work history demonstrated she was "adaptively functional"). Consideration of these cases further illustrates that the ALJ had an insufficient record to adequately consider Listing 12.05C. Finally, this case is distinguishable from *Sneed v. Barnhart*,[18] which involved only "isolated comments about [the claimant]'s possible limited intelligence." 88 F. App'x 297, 300-01 (10th Cir. 2004). Here, as noted above, the record contains multiple indications that Heims has an intellectual impairment. This includes the ALJ's finding of borderline intellectual functioning and the ALJ noting Heims has an estimated IQ-score range from 70 to 75. In addition, both the ALJ and state agency consultants found Heims has more significant deficits in adaptive functioning than the claimant in *Sneed* (who had moderate difficulty with social functioning and otherwise had only mild limitations).

Based on this record, and especially in light of the ALJ's failure to address Heims' IQ score and Listing 12.05C, I cannot say that substantial evidence supports a finding that Heims is not disabled. *Cf. Cheatum*, 388 F. App'x at 576-77 (substantial evidence

---

[18] 88 F. App'x 297 (10th Cir. 2004).

supported finding claimant's impairments, which included borderline intellectual functioning, did not meet Listing 12.05C based, in part, on the opinion that claimant did not have deficits in adaptive functioning); *Cox*, 495 F.3d at 619 (substantial evidence supported ALJ's determination that claimant's impairments did not meet or equal Listing 12.05C based on consultative psychological examiner finding a lack of limitations in adaptive functioning); *Clark v. Apfel*, 141 F.3d 1253, 1254, 1256 (8th Cir. 1998) (substantial evidence supported ALJ's decision to disregard claimant's one-time low IQ score where medical records made no mention of intellectual impairment and claimant had no significant restrictions in her activities of daily living). Therefore, I respectfully recommend that the district court reverse and remand the case for the ALJ to further develop the record regarding Heims' IQ score and to address whether Heims' mental impairment meets or equals Listing 12.05C. I recommend that on remand, the ALJ obtain a consultative examination that addresses Heims' IQ score and mental functioning.

### B.     Questions Posed to Vocational Expert

Heims argues that the ALJ improperly framed questions to the VE because the ALJ's questions to the VE did not mirror the limitations assessed by Dr. Quinn, a state agency psychological consultant (whose opinion the ALJ gave "considerable weight" after finding it consistent with Heims' "medical history and self-reported daily activities") (AR 40). *See* Doc. 15 at 10-11. Heims' argument that the questions to the VE did not sufficiently set forth Heims' limitations is premised on the idea that the ALJ did not accept all of Dr. Quinn's proposed limitations. In particular, Heims argues that Dr. Quinn proposed more specific limitations than the ALJ, found Heims limited "in maintaining pace" (unlike the ALJ), and noted that Heims' abilities would vary based on her emotional status. *See* Doc. 15 at 11.

Dr. Quinn found Heims suffered from no more than moderate limitations in all categories (including those related to interacting with coworkers), except he found her

markedly limited in her ability to interact appropriately with the general public. AR 159-60. He concluded that Heims "is able to complete simple, repetitive tasks in a sustained manner[, although] she will have difficulties with sustaining attention, following detailed instructions, maintaining pace, interpersonal functioning, handling change, and using good judgment." AR 161. Dr. Quinn further explained:

> Regarding maintaining concentration, persistence, or pace, the claimant has borderline range intellect and her cognitive functioning/pace is expected to vary secondary to her emotional status. Despite this, the claimant has only moderate difficulties as she is able to follow spoken instructions (per report), her cognitive functions are frequently intact in the medical evidence, and the claimant has demonstrated that her cognitive functions are intact for completion of simple, repetitive tasks per function report evidence.

AR 161. He also found that Heims "would need to work superficially of others." AR 161.

In arguing that Dr. Quinn found greater limitations than the ALJ, Heims takes Dr. Quinn's statements out of context and ignores Dr. Quinn's ultimate conclusion of Heims' abilities "despite" her limitations. Consistent with Dr. Quinn's finding that Heims suffers from marked limitations in her ability to interact with the general public, the ALJ found that Heims could have "no interaction" with the public. AR 36. The ALJ also limited Heims to "occasional interaction" with coworkers and supervisors, which is not necessarily less limiting than Dr. Quinn's superficial-contact limitation. *See Bendt v. Chater*, 940 F. Supp. 1427, 1433 (S.D. Iowa 1996) (holding that "[t]he ALJ's limitation that [claimant] may have . . . occasional contact with co-workers and/or supervisors" was consistent with consulting psychologist's opinion that claimant is "able to sustain at least superficial, short-lived social interactions").[19] And although Dr. Quinn found that

---

[19] In addition, although the Eighth Circuit did not specifically address the issue in *Hulsey v. Astrue*, 622 F.3d 917, 922-25 (8th Cir. 2010), in that case, the court recognized that a claimant limited to work involving "only superficial interpersonal contact" could work as a "cleaner,

Heims' cognitive functioning and pace would be affected by her emotional status, he concluded that she could perform simple, repetitive tasks in the workplace "despite this." The ALJ's determination that Heims can perform tasks "that can be learned in 30 days or less involving no more than simple work-related decisions and requiring little to no judgment, with only occasional workplace changes" seems consistent with Dr. Quinn's opinion. Heims does not further articulate her argument (particularly, how Dr. Quinn's limitations were "more specific" than those imposed by the ALJ) or cite to evidence indicating how the ALJ erred by failing to adopt further limitations different than those contained in the RFC assessment. Heims likewise does not suggest what greater limitations the ALJ should have imposed. The ALJ's RFC assessment is supported by Dr. Quinn's medical opinion. Therefore, the remaining question is whether the ALJ's questions to the vocational expert properly reflected those limitations that the ALJ included in the RFC determination.

An ALJ bears the burden of proving there are jobs in the national economy the claimant can perform. *See Gieseke v. Colvin*, 770 F.3d. 1186, 1189 (8th Cir. 2014); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). "In making this determination, the ALJ may rely on testimony by a VE that is 'based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" *Gieseke*, 770 F.3d at 1189 (quoting *Cox*, 495 F.3d at 620). "[T]he ALJ may exclude any alleged impairments that [the ALJ] . . . properly rejected as untrue or unsubstantiated." *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)). Thus, the ALJ's questions to the vocational expert need only reflect those limitations that the ALJ finds are applicable to claimant. *See Harwood v. Apfel*, 186 F.3d 1039, 1044 (8th Cir. 1999).

---

housekeeping" as defined in section 323.687-014 of the Dictionary of Occupational Titles (which is one of the jobs the ALJ found Heims was capable of performing).

Here, the relevant hypothetical posed by the ALJ matched the ALJ's ultimate mental RFC determination—a person "limited to tasks learned in 30 days or less involving no more than simple work related decisions requiring little to no judgment and only occasional work place changes," and who "should have no interaction with the public and no more than occasional interaction with co-workers or supervisors." AR 36, 82. The nonexertional restrictions presented to the VE in this hypothetical were identical to those restrictions ultimately assessed by the ALJ for Heims' mental RFC. The ALJ did not err in posing questions about a hypothetical individual with the same limitations that the ALJ ultimately included in Heims' RFC determination. Based on these questions, the VE testified that there were jobs the hypothetical individual could perform, which existed in sufficient numbers in the national economy, including mail clerk, photo copy machine operator, cleaner/housekeeper, sorter, ticket counter, and document preparer. AR 82-83.

Because the ALJ's hypothetical questions exactly mimicked the mental limitations ultimately assessed, I find that the ALJ's questions to the vocational expert were proper (although I recognize that new hypotheticals may be needed on remand if the RFC determination changes). Therefore, I respectfully recommend that the district court affirm the ALJ's findings with respect to this issue.

### C.    *Some Medical Evidence*

Heims challenges the ALJ's RFC determination by arguing that it is not supported by some medical evidence. An ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). When determining a claimant's RFC, the

ALJ considers medical opinions "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b), 416.927(b) (2017).[20]

The bulk of Heims' argument centers on the ALJ's failure to develop the record by ordering IQ testing. Heims argues that because the ALJ did not obtain an IQ test, the ALJ improperly attempted to develop the record without professional assistance. Doc. 13 at 11-14. I have already concluded that the ALJ erred in not ordering a consultative examination regarding Heims' IQ score. I find that Heims's IQ score in this case was a "crucial issue" because with those results, Heims may have been found to have an IQ score that would place her within the range to meet or equal Listing 12.05C. Therefore, I find that the ALJ failed to fully develop the record as to this issue and, thus, her RFC finding could be flawed. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (suggesting that where a "crucial issue" goes undeveloped, this could lead to an erroneous RFC finding).

Heims further argues that because the ALJ failed to properly develop the record, the available medical opinion evidence (from non-examining state agency consultants) does not provide substantial evidence to support the ALJ's opinion. Doc. 15 at 11-13. The only medical opinion in the record (aside from the state agency consultants' opinions) comes from Dr. Williams (an opinion from Nurse Carlson is also in the record, but it is not a "medical opinion" as defined by the regulations because Nurse Carlson is not an acceptable medical source). *See* AR 839-43, 1438-39. The ALJ gave limited weight to Dr. Williams' consultative examination opinion because it was "based upon [a] one-time examination[] of [Heims] performed during the previously adjudicated period of non-disability." AR 41. The ALJ did not further assess or discuss this opinion. As for the

---

[20] New regulations for evaluating medical opinions went into effect on March 27, 2017, and some, by their terms, apply retroactively. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The Eighth Circuit has applied these new rules retroactively, which are substantively the same as the old rules. *See, e.g.*, *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). I cite to the new 2017 regulations.

25

opinions by state agency consultants Dr. Quinn and Dr. Tashner, the ALJ gave those opinions "considerable weight" based on the doctors' "specialized training and expertise" and familiarity with the disability determination process, their comprehensive reviews of the record, consistency between their opinions and Heims' medical history and reports of activities of daily living, and the detailed narratives included in their opinions.  AR 40.

It appears that Heims argues the record is insufficient under *Nevland v. Apfel*, which held that the ALJ's RFC determination lacked sufficient support when the only RFC opinions in the record came from state agency consultants.  204 F.3d 853, 857-58 (8th Cir. 2000).  This case differs from *Nevland* because here, an RFC opinion from an examining source is in the record (Dr. Williams' opinion), although it relates to a different time period, and the ALJ completely discounted it for that reason.  Unlike *Nevland*, the record here also contains an RFC opinion from a treating but nonacceptable medical source (Nurse Carlson's opinion).  Nevertheless, because I am recommending that the case be remanded for the ALJ to order a consultative examination to assess Heims' IQ score, I also recommend that the consultative examiner further address her mental RFC.  Because Nurse Carlson was "unable to assess" Heims' functional abilities (AR 1438), that opinion does not provide sufficient medical evidence regarding Heims' mental RFC.  And Dr. Williams' opinion does not address Heims' functional abilities during the relevant time period (as found by the ALJ).  Also, the opinions from Dr. Quinn and Dr. Tashner[21] acknowledge that Heims has the impairment of borderline

---

[21] Dr. Quinn's opinion noted Heims' history of "difficulties with treatment compliance."  AR 161, 176.  He further noted she "has borderline intellect and her cognitive functioning/pace is expected to vary secondary to her emotional status."  *Id.*  The ALJ, in determining Heims' mental RFC, discounted some mental functioning limitations by noting these occurred during instances of noncompliance with medication.  AR 38-39.  The ALJ and Dr. Quinn, however, do not address whether (or how) Heims' mental impairments may impact her ability to comply with treatment.  This factor further weighs in favor of finding the ALJ's mental RFC determination is not supported by some medical evidence regarding Heims' mental functioning.  *See Pates-Fire v. Astrue*, 564 F.3d 935, 945-47 (8th Cir. 2009) (the ALJ could not discredit the claimant's

26

intellectual functioning but fail to address whether Heims meets or equals Listing 12.05C (possibly due to the lack of sufficient IQ test scores in the record). This calls into question whether their opinions fully assessed Heims' borderline intellectual functioning in reaching their conclusions about Heims' RFC.[22] Accordingly, it is possible these opinions are insufficient to support the ALJ's mental RFC. I recommend that on remand, the ALJ order a consultative examination to not only assess Heims' IQ score, but to also further address her mental RFC.

### D. Weight to Vocational Rehabilitation Reports

Heims argues that the ALJ did not adequately consider the reports from Goodwill Industries and Iowa State Vocational Rehabilitation Services and that had the ALJ properly considered these reports, the ALJ would have found that Heims "cannot function in competitive employment." Doc. 15 at 14-19.

"The Social Security Administration considers community support workers[ and] vocational rehabilitation specialists . . . to be acceptable, non-medical sources." *Meyer v. Colvin*, No. C15-3120, 2016 WL 413103, at *10 (N.D. Iowa Feb. 2, 2016) (citing 20 C.F.R. §§ 404.1513(d); 416.913(d) (2015); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007)), *report and recommendation adopted*, 2016 WL 4770044 (N.D. Iowa Sept. 13, 2016). "Opinions from . . . nonmedical sources may reflect the source's judgment about

---

subjective complaints based on the claimant's noncompliance with treatment when "overwhelming evidence" established "her noncompliance with her medication was a medically-determinable symptom of her mental illness" and therefore, justifiable).

[22] Heims also argues that the state agency consultants erred by failing to address the vocational rehabilitation opinions in detail. Heims concedes that the state agency consultants cited this evidence and acknowledged the reports concluded "[Heims] was deemed 'not prepared for competitive employment at this time' in 3/13, as the claimant was noted as having difficulties with attendance, receiving feedback, and she demonstrated narcissistic tendencies." AR 161, 196. Heims cites to no authority (and I am aware of none) supporting that the state agency consultants (as opposed to the ALJ) were required to do more.

some of the same issues addressed in medical opinions from acceptable medical sources," and the ALJ should "consider these opinion using the same factors." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). These factors include:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2017). In general, "the ALJ has more discretion in determining the weight afforded to 'other source' evidence." *Meyer*, 2016 WL 4770044, at *7.

The ALJ considered the vocational rehabilitation opinions and explained the weight given to those opinions. The ALJ gave minimal weight to prior opinions (AR 380-95, 598-99, 608-11) because they were based on a previously adjudicated period of non-disability. AR 41. This is a proper reason to give such opinions limited weight. *See Turley v. Sullivan*, 939 F.2d 524, 527-28, at n.4 (8th Cir. 1991) (finding "the ALJ did not err by giving greater emphasis" to more recent evidence as opposed to older vocational rehabilitation opinions). The ALJ then gave limited weight to the more recent vocational rehabilitation opinion (AR 727-42) because "the opinion was based primarily upon the claimant's subjective complaints" (which the ALJ did not fully credit) and failed to provide "any specific, quantified statements regarding Heims' "ability to perform specific work-related activities on a regular and continuing basis." AR 41. In addition, many of the objective statements contained within the reports show that Heims was unemployable largely due to attendance issues, which ultimately resulted in her removal from the program. AR 635-38, 641. The record shows that the ALJ considered the statements from Heims' vocational rehabilitation specialists and gave reasons for the

28

weight given to those opinions. I cannot say that this reasoning is not supported by the record. Although Heims disagrees with the weight the ALJ gave this evidence, the ALJ's analysis on this issue does not require remand. *See Meyer*, 2016 WL 4770044, at *6-7.

## III. CONCLUSION

I find that the ALJ did not fully develop the record regarding Heims' IQ score and mental limitations and that based on this record, substantial evidence does not support that Heims does not meet or equal Listing 12.05C, nor does substantial evidences support the ALJ's determination of Heims' mental RFC. Therefore, I respectfully recommend that the Court **reverse and remand** the ALJ's decision with instructions to order the necessary consultative evaluations to assess Heims' IQ score and limitations imposed by her mental impairments. On remand, the ALJ should consider whether Heims' impairments meet or equal Listing 12.05C.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 16th day of February, 2018.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa

29